**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
\---------------------------------------------------------------x
                                                :

PREFERRED FREEZER SERVICES, LLC,       :
                                                :

                        Plaintiff,         :
                                                  :        Case No.

        - against -                  :
                                                    :

AMERICOLD REALTY TRUST,             :        **COMPLAINT**
                                                    :

                      Defendant.       :
                                                         :
\---------------------------------------------------------------x

       Plaintiff Preferred Freezer Services, LLC ("PFS" or the "Company"), by its undersigned counsel, for its Amended Complaint against Defendant Americold Realty Trust ("Americold" or "Defendant"), upon knowledge as to its own conduct and upon information and belief as to all other matters, hereby alleges:

## NATURE OF THE ACTION

       1.      Americold, the largest company in the cold-storage warehouse business, obtained the confidential, trade secret information of its competitor, PFS, in order to purchase valuable real estate on which PFS conducts its operations (the "Properties"). Americold accomplished this by participating, fraudulently and in bad faith, in a bidding process for the sale of PFS. Americold's conduct constituted trade secret misappropriation, fraud, breach of a confidentiality agreement, and breach of the implied covenant of good faith and fair dealing. PFS brings this action under the federal Defend Trade Secrets Act and state law to recover the damages it has suffered, continues to suffer, and to enjoin further misuse of that information.

**BRIEF SUMMARY OF THE FACTS**

2.       In October 2018, PFS launched a competitive process to sell one hundred percent of the equity of the Company.  The Company's financial advisor, UBS Securities LLC ("UBS"), contacted a number of parties, including Americold, who UBS believed might have an interest in purchasing PFS.  Americold misrepresented its true intentions, purporting to have an actual interest in acquiring the Company, when in fact Americold was using the bidding process as a pretext to obtain confidential and trade secret information of PFS in order to purchase the Properties.

███████In fact, as early as 2017, Americold covertly began to pursue a strategy of purchasing warehouse facilities that were leased to its competitors, including PFS. ████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████

4.       Americold was keenly interested in the Properties on which PFS' facilities are located.  As the largest operator in the cold-storage warehouse business, Americold knew that PFS' facilities were some of the industry's newest, state-of-the-art, and most attractive.  As part of the bidding process, PFS permitted interested suitors, only after they agreed to a strict confidentiality and non-disclosure agreement, to access confidential, proprietary, competitively sensitive, and trade secret information, ██████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████ (the "Confidential Information").  PFS otherwise kept the Confidential Information secret and concealed from the public, as it would provide great value to its competitors and PFS would be competitively disadvantaged by its disclosure.  PFS took

reasonable measures to restrict access to such information, which derives independent economic value because it is not generally known in the market.

5.      Americold signed such a confidentiality and non-disclosure agreement on October 23, 2018 (the "Agreement"), a copy of which is attached hereto as Exhibit "A."  But Americold misrepresented its interest in purchasing the Company, which was the pretext it used to induce PFS to provide it with access to the Confidential Information, which Americold then used – and always intended to use – for its own pursuit of the Properties, and to damage its competitor, PFS.



████████████████████████████████████████████████████████████████

8.     Americold obtained Confidential Information and trade secrets from PFS through the bidding process. ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████ This proprietary information derives independent economic value from the fact that is not generally known in the market, or even to PFS' landlords.   PFS took reasonable steps to protect the confidentiality of its trade secrets, only disclosing such information to parties who represented that they had a legitimate interest in purchasing the Company, and only with the protections of the Agreement in place.

9.     Armed with full knowledge of PFS' Confidential Information, in bidding for PFS Americold was in the best position to know the true value of the Company because of its sophisticated understanding of the industry. █████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████ Americold was never seriously interested in buying PFS; its feigned interest in doing so was a pretense to obtain valuable information it could use to its advantage.

████████████████████████████████████████████████████████████████

3432019.1

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

11.   Americold used PFS' Confidential Information to benefit itself and harm a competitor:  to try to buy up the real estate that PFS relied on for its business, in violation of the Agreement, statutory law and common law, both during its participation in the bidding process and after it was eliminated.

12.   After it was eliminated from the bidding process, but before the remaining bidders submitted final bids, Americold used the Confidential Information it had obtained to attempt to purchase a number of the Properties. █████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████ PFS ultimately signed a definitive merger agreement with the winning bidder, Lineage Logistics LLC ("Lineage"), on February 16, 2019.

13.   Americold's continued violations of the Agreement and its misappropriation of Confidential Information and trade secrets used in its efforts to acquire PFS continue to cause damage to PFS.  Because Americold is a competitor to both PFS and other strategic bidders, Americold knew that its efforts to purchase the Properties would disrupt the business opportunities of PFS. ██████████████████████████████████████ ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

14.     Americold's campaign has caused, and will continue to cause, harm to PFS.

███████████████████████████████████████████████████████████

15.     Americold has made clear its intention to continue its wrongful conduct.  Should Americold be allowed to do so, PFS will continue to suffer substantial, immediate, and irreparable harm ████████████████████████████████████████████ Moreover, Americold has used the Confidential Information and trade secrets it acquired through improper means in an attempt to become the landlord of its competitors, which would provide it an unfair business advantage over them.

## PARTIES

16.     Plaintiff PFS is a limited liability company organized and existing under the laws of the state of Delaware, with its headquarters in Chatham, New Jersey.

17.     Defendant Americold is a real estate investment trust ("REIT") organized and existing under the laws of the state of Maryland, with its principal place of business at 10 Glenlake Parkway, Suite 600, South Tower, Atlanta, Georgia 30328.  On information and belief, Americold regularly conducts business within the State of New York, directly and through its direct and indirect subsidiaries and affiliates.

## JURISDICTION AND VENUE

18.     This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331, because it arises under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.* This Court has supplemental or pendent jurisdiction over PFS' remaining claims under 28 U.S.C. § 1367.

19.     Venue is proper in this Court pursuant to 18 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Americold because, *inter alia*, Americold expressly consented in the Agreement to the bringing of this action in this Court.

## FACTUAL ALLEGATIONS

### PFS and its Suppliers

20.     PFS was founded in 1989 by its current Chief Executive Officer ("CEO"), John Galiher.  PFS offers modern, state-of-the-art, full service temperature-controlled warehouses throughout the United States and is the third-largest public refrigerated warehouse company in North America.  PFS also provides refrigerated storage and warehouse services, including handling, sorting, repacking, and blast freezing through its strategically-positioned, port-centric locations.  PFS operates thirty nine facilities across nine regions nationwide, with construction commencing on a multitude of new facilities in the near future.  PFS also has an international presence, with cold-storage warehouses in both China and Vietnam.





8

**Americold**

24.     Americold, through its direct and indirect subsidiaries and affiliates, is both an owner and operator of temperature-controlled warehouses.  It is the world's largest operator of temperature-controlled warehouses, and is PFS' biggest public refrigerated warehouse competitor.  Americold holds approximately 23% of the North American cold chain capacity, while PFS' share is 8.4%.  Americold owns and operates approximately 160 temperature-controlled warehouses across the United States, Canada, Australia, New Zealand, and Argentina.

25.     Unlike a traditional REIT, Americold, to PFS' knowledge, has not historically owned, and certainly is not primarily focused on, real estate upon which it does not also operate or plan to operate a warehouse.  Rather, prior to entering into the Agreement, Americold represented that ownership of its temperature-controlled warehouses is fundamental to its business model, which is focused on combined ownership and operation of facilities to better serve its customers' cold chain needs.  The tax advantages and financing options that come from being a REIT are incidental to Americold's primary purpose—operation of warehouses within its cold chain network.

**Americold's Prior Interest in PFS' Properties**

26.     Only after Americold induced PFS to enter into the Agreement did PFS learn that Americold has long been interested in acquiring PFS' facilities.  In December 2017, Americold was contacted by a commercial real estate broker, Lincoln Property Company, regarding the potential purchase of a PFS facility in Sharon, Massachusetts (the "Sharon Facility").  Particularly attractive to Americold were the relatively new construction of the building, its location in a major metropolitan area (near Boston), and that it came with a long-

term "triple net lease"[1] to a stable tenant who also happened to be a competitor. Americold recognized that, as with the other PFS Properties, a significant advantage in owning property leased to a competitor is the opportunity to take over the warehouse's operations if the tenant defaults on its lease obligations.

27.     Shortly after Lincoln Property Company contacted Americold regarding the Sharon Facility, Americold began discussions with the owner of the property, Jumbo Capital Management LLC ("Jumbo Capital"), and entered into a confidentiality and non-disclosure agreement with Jumbo Capital ("Jumbo NDA"). Pursuant to the Jumbo NDA, Americold received information about the Sharon Facility, PFS' lease, building features, financing, prior sales history and capitalization rates (or "cap rates").[2] This information did not include the trade secret information that Americold received pursuant to the Agreement because the landlords would not have this sensitive information.

28.     With the benefit of this information, Americold submitted an offer to purchase the Sharon Facility on or about March 26, 2018, which was rejected by Jumbo Capital. Thereafter, Americold continued to evaluate additional PFS Properties for potential purchase.

29.     Several months later, in early August 2018, Americold was approached by a real estate broker regarding a PFS facility in Perth Amboy, New Jersey (the "Perth Amboy Facility"). The broker provided Americold with basic information about the Property, including the age of the property, its square footage, the tenant, type of existing lease and its duration.

---

[1] A triple net lease is one for which the tenant is responsible for real estate taxes, insurance and maintenance.

[2] The amount paid for a commercial property is a multiple of the yearly rent. Capitalization rate refers to the yearly rent divided by the amount paid for the Property. For example, if the yearly rent paid is $ 2.5 million, and a buyer pays $32 million to purchase the property, the "cap rate" is approximately 7.8%. Thus a higher amount paid for a property results in a lower cap rate as the two figures have an inverse relationship.

3432019.1

Americold entered into another NDA in order to obtain more detailed information about the Perth Amboy Facility, which it needed to evaluate the potential purchase.  After reviewing the information, Americold decided not to bid on the Perth Amboy Facility.

**The PFS Bidding Process**

30.    In September 2018, PFS engaged UBS as its financial advisor in connection with a possible sale of PFS.[3]  PFS asked UBS to help identify potential buyers and financing sources, and to prepare preliminary marketing materials to be distributed to interested parties at the outset of the bidding process.





3432019.1

37.   ████████████████████████████████████████ PFS ultimately signed a definitive agreement and plan of merger on February 16, 2019 with Lineage, the winning bidder.

**<u>Americold's Disingenuous Participation in the Bidding Process</u>**





44.    Americold was not as transparent in its dealings with UBS and PFS, who were unaware that, while feigning interest in purchasing the Company, Americold was actively engaged with a commercial real estate broker and directly communicating with PFS' landlords in an effort to purchase the Properties.



46.    Had Americold disclosed its true intent, PFS would not have signed the Agreement or disclosed its trade secrets and Confidential Information to Americold.  Americold knew this, which is why it made no such disclosure.  Indeed, given its proclaimed status as the

14

number one cold-storage provider in the world, it is not plausible that Americold did not know that PFS would find it important that Americold had already taken steps to buy PFS' Properties and had an ongoing strategy to do so when it signed the Agreement, while simultaneously purporting to be a serious bidder for the Company.

47.     Americold misrepresented to UBS and/or PFS that it had a genuine interest in acquiring the Company.  On the basis of such misrepresentations, PFS was induced to execute the Agreement on October 23, 2018.  Americold entered into the Agreement not as a serious bidder, but in order to gain access to information that it knew would be extremely valuable – if not crucial – in its negotiations to acquire PFS' Properties.



3432019.1



3432019.1



17



**The Confidential Information**

59.     To assist Americold in evaluating a possible negotiated transaction with the

Company, and relying on the confidentiality restrictions and obligations Americold had agreed

to,

3432019.1



19



65.     By executing the Agreement, Americold obtained Confidential Information from PFS that enabled it to comprehensively assess the value of PFS' Properties.  This sensitive financial information constitutes proprietary trade secrets of PFS, and would not have been disclosed to others, such as Americold, without stringent confidentiality protections.

3432019.1



3432019.1



70.     At no time during the November 1 meeting – or at any other time during its
participation in the bidding process – did Americold disclose to PFS that it was simultaneously
attempting to purchase PFS' facilities and communicating directly with PFS' landlords in
pursuit of that goal.

73.     On November 14, 2018, Americold submitted a low-ball offer to UBS for the
purchase of PFS. Because Americold was among the
lowest bidders, it was quickly eliminated from the process.

**<u>Americold's Misconduct</u>**





---

[4] In its Q4 2017 Earnings Call on March 28, 2018, Americold stated that "in terms of market pricing on potential acquisitions… we are seeing transactions again happen on the cap rate basis in that 6.5% to 8% [range]."

3432019.1



3432019.1

Any suggestion that Americold obtained the Confidential Information from PFS, but did not use it in its quest to acquire the Properties is not credible.

3432019.1



27



91.     On January 11, 2019, PFS, through its counsel, sent Americold a cease and desist letter, informing Americold that it was in breach of the Agreement based on the aforementioned contacts with PFS' landlords.

92.     By way of response, counsel for Americold sent PFS' counsel a letter dated January 15, 2019, in which it denied that its conduct violated the Agreement but did not deny that it was attempting to purchase PFS' Properties.  Americold stated that it believed it could, without violating the Agreement, reach out to any PFS landlord and attempt to initiate a transaction to purchase the Properties.  That belief is incorrect.

94.     Americold's actions, in direct contravention of the Agreement and in bad faith, have harmed and are continuing to further harm PFS.

## COUNT I
### (Defend Trade Secrets Act – 18 U.S.C. § 1836)

95.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 94 above as though set forth fully herein.

3432019.1

███████████████████████████████████████████

97.     By misrepresenting its interest in purchasing PFS, Americold gained entry into the bidding process and obtained PFS' trade secret information by improper means. PFS took reasonable measures to keep its trade secret information confidential.  PFS does not make such information publicly available, or share it with its competitors or landlords.  PFS only permitted Americold access to its trade secrets after Americold misrepresented that it was a serious suitor. PFS did so in reliance on the protections of the Agreement, which restricted Americold's use of the Confidential Information, including PFS' trade secrets, to evaluating a purchase of PFS.

98.     Americold improperly disclosed PFS' trade secret information to its broker, HFF, in connection with its effort to acquire the Properties.

99.     Americold also willfully and maliciously misappropriated PFS' trade secret information by using such valuable information in its dealings with PFS' landlords – either directly or indirectly through its broker – in its efforts to acquire the Properties.

100.    As a result of Americold's improper acquisition, willful and malicious misappropriation, and misuse of PFS' trade secrets, PFS has suffered and will continue to suffer irreparable harm and loss.  PFS has sustained damages in an amount to be determined at trial.

## COUNT II
### (Fraud in the Inducement)

101.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 100 above as though set forth fully herein.

3432019.1

102.    Americold misrepresented to PFS directly, and to the Company's agent, UBS, that it had an actual interest in acquiring PFS as an operating company, when it was really only interested in acquiring the Properties.



104.    Americold made such misrepresentations in order to be permitted to participate in the bidding process for the sale of PFS, and to induce PFS to enter into the Agreement on or about October 23, 2018, pursuant to which Americold obtained Confidential Information regarding the Company, its leases and operations.    Americold subsequently breached the Agreement by misusing and misappropriating the Confidential Information for its own competitive advantage in negotiations to acquire PFS' real estate, rather than solely to evaluate its purchase of the Company, the only purpose permitted by the Agreement.

105.    Americold knew when it entered the bidding process for PFS and signed the Agreement that it was not interested in purchasing the Company.

106.    In entering into the Agreement with Americold and providing Americold its Confidential Information, PFS justifiably relied on Americold's misrepresentations regarding its interest in acquiring the Company.

107.    As a result of Americold's fraudulent inducement of PFS to enter into the Agreement and disclose Confidential Information to Americold, PFS has been damaged in an amount to be determined at trial.

108.    Americold's conduct was malicious, wanton, willful, or reckless, entitling PFS to punitive damages.

**COUNT III**
**(Breach of Contract)**

109.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 108 above as though set forth fully herein.

110.    The Agreement is a valid and binding contract.

111.    PFS has performed all of its conditions, obligations, covenants, and promises under the Agreement.



3432019.1

██████████████████████████████████████████████████

114.    As a direct and proximate result of Americold's breach of the Agreement, PFS has suffered and will continue to suffer irreparable harm and loss—████████████████ ███████████—and has sustained damages in an amount to be proven at trial, including but not limited to loss of confidentiality of PFS' non-public, confidential, and/or proprietary information, loss of capital, loss of valuable business relationships, loss of opportunity of obtaining and/or retaining valuable business relationships, loss of profits and future profits, loss of reputation, and loss of good will.

## COUNT IV
### (Breach of the Covenant of Good Faith and Fair Dealing)

115.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 114 above as though set forth fully herein.

116.    The Agreement contains an implied covenant of good faith and fair dealing, which requires the parties to refrain from engaging in arbitrary or unreasonable conduct that prevents the other party to the contract from receiving the fruits of its bargain.

117.    Defendant violated the implied covenant of good faith and fair dealing by, among other things, (i) obtaining PFS' Confidential Information during the course of the bidding process in bad faith and in a manner that was inconsistent with PFS' justified expectations, (ii) submitting a proposal for purported purchase of the Company to PFS' financial advisor that Americold knew had no chance of being accepted, in an effort to shield its intentional misuse of

PFS' Confidential Information; and (iii) attempting to purchase the Properties on which PFS' facilities are located.

118.    By virtue of Americold's actions, PFS has been deprived of the right to receive the benefits of its bargain and its rights under the Agreement.

119.    Americold's breaches of the implied covenant of good faith and fair dealing have directly and proximately caused injury to PFS.

## COUNT V
### (Tortious Interference With Prospective Economic Advantage)

120.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 119 above as though set forth fully herein.

121.    Americold was aware of PFS' prospective economic advantages, and intentionally interfered with them as set forth herein.

122.    Americold's actions disrupted PFS' propsective economic advantages, causing injury to PFS.

123.    Americold's conduct in interfering with PFS' prospective economic advantage was malicious, wanton, willful, or reckless, entitling PFS to punitive damages.

## COUNT VI
### (Unfair Competition)

124.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 123 above as though set forth fully herein.

125.    Americold took advantage of its access to PFS' Confidential Information – ██████████████████████████████████████ – which it obtained only by virtue of its bad-faith participation in the PFS bidding process.   Americold acted in bad faith by

exploiting PFS' confidential and proprietary information for Americold's own commercial advantage, to the wrongful detriment of PFS.



127.    As a result of Americold's unfair competition with PFS, PFS has been damaged in an amount to be determined at trial.

## COUNT VII
### (Misappropriation of Confidential Information)

128.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 127 above as though set forth fully herein.

129.    By reason of its participation in PFS' bidding process and its execution of the Agreement, Americold owed to PFS a duty of confidentiality.

During the course of Americold's deceptive participation in PFS' bidding process, Americold gained access to, and possession of, Confidential Information rightfully owned and possessed by PFS,

131.    Throughout all relevant times, PFS took reasonable steps to protect the secrecy of the Confidential Information.

132.    Upon information and belief, and in violation of its duty of confidentiality to PFS, Americold has misappropriated PFS' Confidential Information with the intention of wrongfully using it to gain an unfair competitive advantage.

3432019.1

133.    As a result of Americold's misappropriation, PFS has suffered and will continue to suffer damages in an amount to be determined at trial.

134.    Americold's conduct was malicious, wanton, willful, or reckless, entitling PFS to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, PFS respectfully requests that an Order be entered:

A.    Temporarily, preliminarily, and permanently enjoining Americold from:

1.    misusing, disclosing or misappropriating its Confidential Information or trade secrets;

2.    contacting Plaintiff's landlords, whether or not initial contact has been made;

3.    purchasing the Properties;

4.    otherwise violating the Agreement; and

5.    taking any steps to impede PFS' pending merger through unsolicited offers to purchase the Properties and/or otherwise;

B.    On all of PFS' Counts, awarding PFS damages in an amount to be proven at trial, including any and all compensatory and consequential damages, exemplary damages, and all expenses PFS has incurred in enforcing its rights and remedies under the Agreement;

C.    On Counts I, II, V, and VII, awarding PFS punitive damages as a result of Americold wanton, malicious and fraudulent conduct;

D.    An award of costs of suit and attorneys' fees;

E.    An award of pre-judgment interest at the maximum legal rate; and

3432019.1

F.      Any such other and further relief as the Court may deem just and proper.


Dated: New York, New York
       April 2, 2019

                         **FRIEDMAN KAPLAN SEILER**
                         **& ADELMAN LLP**


                         _____
                         Eric Seiler
                         Robert S. Smith
                         Mala Ahuja Harker
                         Blair R. Albom
                         7 Times Square
                         New York, New York  10036-6516
                         T:  (212) 833-1100
                         F:  (212) 833-1250

                         *Attorneys for Plaintiff Preferred Freezer Services,*
                         *LLC*

3431636.1

# EXHIBIT A















